UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELENA POLLARA-JOHNSON,
an individual,

      Case No.:

    Plaintiff,
v.

IQ DATA INTERNATIONAL, INC., and
PACIFICA FOREST LAKES LLC d/b/a
AVENTINE AT FOREST LAKES,

    Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, ELENA POLLARA-JOHNSON (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, IQ DATA INTERNATIONAL, INC. (hereinafter, "IQ DATA") and PACIFICA FOREST LAKES LLC d/b/a AVENTINE AT FOREST LAKES (hereinafter, "AVENTINE")(hereinafter collectively, "Defendants") In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1. This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, "FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 *et seq.* (hereinafter "FDCPA"), wherein Defendants unlawfully attempted to collect a consumer debt directly from Plaintiff, which Plaintiff does not owe.

2. Further, this is an action brought by Plaintiff for damages for IQ DATA's violation of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein IQ DATA unlawfully reported erroneous and fictitious information on

1

Plaintiff's personal consumer credit reports.

## JURISDICTION, VENUE & PARTIES

3. Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

4. Defendants are subject to the jurisdiction of this Court as they regularly transact business in this District.

5. Venue is proper in this District as Defendants' transactions described herein occur in this District.

6. At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

## FCCPA AND FDCPA STATUTORY STRUCTURE

7. The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

8. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

9. Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information

regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

10. For example, the FDCPA prohibits a debt collector from attempting to collect a debt that is not owed. *See* 15 U.S.C. §§ 1692(e) and 1692(e)(2)(A).

11. Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt from a debtor that they know is not legitimate. *See* Fla. Stat. § 559.72(9).

## **GENERAL ALLEGATIONS**

12. At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and the FDCPA.

13. At all material times herein, Defendants are "creditors" as defined by Florida Statutes, Section 559.55(5).

14. At all material times herein, IQ DATA is a "debt collector" as defined by the FDCPA.

15. At all material times herein, Defendants attempt to collect a consumer debt, including but not limited to, an apartment complex balance allegedly owed to AVENTINE (hereinafter, the "Debt").

16. At all material times herein, the Debt is a consumer debt, an obligation resulting from transactions for goods or services incurred primarily for personal, household, or family use.

17. At all material times herein, Defendants are a "person" subject to Florida Statutes, Section 559.72. *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

18. At all material times herein, Defendants' conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and the FDCPA.

19. At all material times herein, Defendants act itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

## FCRA STATUTORY STRUCTURE

20. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

21. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

22. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

23. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

24. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the

consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

25. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

26. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

27. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

28. At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

29. At all material times herein, IQ DATA, itself and through its subsidiaries, regularly services debts—and credit reports the same—allegedly owed by consumers residing in Hillsborough County, Florida.

30. At all material times herein, IQ DATA is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

31. At all material times herein, IQ DATA reports information concerning the Debt referenced by account number IQD0PSD006860 (hereinafter, the "Account").

32. At all material times herein, IQ DATA furnishes information concerning the Account to the credit bureaus—after and despite Plaintiff's repeated disputes—IQ DATA continued reporting of the Account to the credit bureaus.

33. At all material times herein, Defendant act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

34. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

35. In March 2019, Plaintiff vacated her apartment at Aventine.

36. Importantly, Plaintiff left her apartment extremely clean and without any trash or debris and has a video and photographs to prove the same.

37. Despite this, Aventine claims that Plaintiff owes Aventine money for a $100.00 "Trash Out" fee and a $150.00 "Apartment Cleaning" fee. A copy of the Billing Ledger is attached as **Exhibit A**.

38. As stated, Plaintiff left the apartment in a clean, orderly fashion, and did not leave any trash behind.

39. Sometime shortly thereafter, Aventine hired IQ DATA for debt collection purposes.

40. On January 16, 2020, IQ DATA sent Plaintiff a collection letter in attempts to collect the Debt. A true and correct copy of the collection letter is attached as **Exhibit B**.

41. In response, on January 24, 2020, Plaintiff sent a dispute letter to IQ DATA in which she enclosed another dispute letter that she had already sent to Aventine. A true and correct copy of the dispute letter to Aventine is attached as **Exhibit C** and the dispute letter to IQ DATA is attached as **Exhibit D**.

42. On May 18, 2020, IQ DATA finally responded to Plaintiff's dispute letter. IQ DATA incorrectly verified the Debt. A true and correct copy of their response letter is attached as **Exhibit E**.

## Unlawful Credit Reporting Facts

43. In July 2020, Plaintiff disputed the Debt to the three credit reporting agencies-Trans Union, Experian, and Equifax.

44. As a result, Experian deleted the Account, but Trans Union and Equifax verified the Account as accurate.

45. As a result, on or about October 8, 2020, Plaintiff, with the assistance of the undersigned, sent a letter to IQ DATA, Trans Union, and Equifax disputing IQ DATA's credit reporting of the Debt, advising that the Debt was not owed and therefore should be removed from

Plaintiff's credit reports.

46. IQ DATA, Trans Union, and Equifax did not correct the error and continue to report that Plaintiff owes the Debt.

## DAMAGES

47. As a result of IQ DATA's reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Debt and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain refinancing.

48. Overall, Plaintiff suffered damage to her credit reputation as a result of IQ DATA's conduct.

49. Plaintiff retained Swift, Isringhaus & Dubbeld, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

50. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against IQ DATA.

51. As a result of IQ DATA's conduct, actions, and inactions, Plaintiff, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Debt and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Debt with late payment information resulting in the Debt being reported as a derogatory, negative, or adverse tradeline account.

52. Defendants' conduct and actions have caused Plaintiff to experience frustration, anxiety, embarrassment, and confusion because she does not owe the alleged Debt.

53. Florida Statutes, Section 559.77 provides for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, an award of attorneys' fees, and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

54. The FDCPA provides for the award of up to $1,000.00 statutory damages, actual damages, an award of attorneys' fees, and costs to Plaintiff, should Plaintiff prevail in this matter against IQ DATA.

### COUNT ONE:
### UNLAWFUL DEBT COLLECTION PRACTICES –
### VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(9)

Plaintiff re-alleges paragraphs one (1) through fifty-four (54) as if fully restated herein and further states as follows:

55. Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect a debt that they knew was not legitimate.

56. As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT TWO:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e and 1692e(2)(A)

Plaintiff re-alleges paragraphs one (1) through fifty-four (54) as if fully restated herein and further state as follows:

57. IQ DATA is subject to, and violated the provisions of, United States Code, Sections 1692e and 1692e(2)(A) by attempting to collect the Debt, which is not owed.

58. Accordingly, IQ DATA violated 15 United States Code, Sections 1692e and 1692e(2)(A).

59. As a direct and proximate result of IQ DATA's actions, Plaintiff sustained damages as defined by United States Code, Section 1692k.

## COUNT THREE
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>

Plaintiff re-alleges paragraphs one (1) through fifty-four (54) as if fully restated herein and further states as follows:

60. IQ DATA is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that the credit bureaus delete the Debt from Plaintiff's credit reports and credit file after re-investigating Plaintiff's dispute.

61. IQ DATA's refusal to request that the credit bureaus delete the Debt was intentionally, willfully, and knowingly done.

62. IQ DATA's re-investigation was not conducted in good faith.

63. IQ DATA's re-investigation was not conducted reasonably.

64. IQ DATA's re-investigation was not conducted using all information reasonably available to IQ DATA.

65. As a result of IQ DATA's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed he would not be able to obtain favorable credit terms as a result of IQ DATA's derogatory

and continued reporting the Debt as owed and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Debt as owed resulting in the Debt being reported as a derogatory, negative, or adverse tradeline account.

66. IQ DATA's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

67. IQ DATA's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

    a. Judgement against Defendants for maximum statutory damages for violations of the FCCPA;

    b. Judgment against IQ DATA for maximum statutory damages for violations of the FDCPA;

    c. Judgment against IQ DATA for maximum statutory damages for violations of the FCRA;

    d. Judgment enjoining IQ DATA from engaging in further conduct in violation of the FCRA;

    e. Actual damages in an amount to be determined at trial;

    f. Compensatory damages in an amount to be determined at trial;

      g.      Punitive damages in an amount to be determined at trial;

      h.      An award of attorney's fees and costs; and

      i.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Jon P. Dubbeld*
**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
10460 Roosevelt Blvd. North
Suite 313
St. Petersburg, FL 33703
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Attorneys for Plaintiff*